## Case No. 947.
### BANK OF WASHINGTON v. BANK OF THE UNITED STATES.
[4 Cranch, C. C. 86.] [1]
Circuit Court, District of Columbia. May Term, 1830. [2]

MONEY HAD AND RECEIVED—WHEN LIES—MONEY PAID ON ERRONEOUS JUDGMENT — LIABILITY OF AGENT.

1. Money paid upon an erroneous judgment, may, after reversal of the judgment, be recovered back in an action for money had and received; and if the money shall have been paid to an agent of the original plaintiff, and remains in his hands, at the time of reversal and demand it may be recovered of the agent.

2. If the amount of the judgment be paid to the plaintiff's agent, and he be notified, at the same time, that a writ of error will be taken out to reverse the judgment, and that he will be expected to refund it if the judgment should be reversed, if he then pay over the money to his principal, without security for his indemnity, it is at his own peril.

[See note at end of case.]

At law. Assumpsit [by the Bank of Washington against the Bank of the United States] for money had and received to the plaintiff's use, to recover back money paid upon an erroneous judgment. [Judgment for plaintiff. This was afterwards reversed by the supreme court in Bank of U. S. v. Bank of Washington, 6 Pet. (31 U. S.) 8. See note at end of case. For other opinions connected with this litigation, see Bank of Washington v. Triplett, 1 Pet. (26 U. S.) 25; Triplett v. Bank of Washington, Case No. 14,178; Bank of Washington v. Neale, Id. 951.]

The case was argued by Mr. Key and Mr. J. Dunlop, for the plaintiffs, and by Mr. Jones and Mr. Lear, for the defendants.

The counsel for the plaintiffs cited Ripley v. Gelston, 9 Johns. 201; Burrough v. Skinner, 5 Burrows, 2639; 1 Chit. Pl. 25; Esp. N. P. 6, 19; Frary v. Dakin, 7 Johns. 79.

CRANCH, Chief Judge, delivered the opinion of the court. This is an action brought January 12, 1830, to recover money paid by the plaintiffs to the defendants, upon a judgment of the circuit court which has been since reversed by the supreme court of the United States. The state of the case, as agreed by the parties, is this: "Triplett and Neale recovered a judgment in this court, at Alexandria, in April term, 1824, against the Bank of Washington, [nowhere reported,] which was afterwards reversed in the supreme court, [Bank of Washington v. Triplett, 1 Pet. (26 U. S.) 25.] The Bank of Washington, on the 2d of June, 1824, applied

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 6 Pet. (31 U. S.) 8.]

to one of the judges of the supreme court, to allow a writ of error to be prosecuted, (the matter in dispute being less than $1,000, so that the bank could not, of right, obtain a writ of error without the special leave of one of the judges of that court.) That judge did not allow the writ; but it was, afterwards, to wit, on the 15th of March, 1825, allowed by the chief justice. After the refusal of the writ, upon the first application, and before its allowance by the chief justice, to wit, on the 30th of August, 1824, Triplett and Neale sued out their execution on the judgment, and immediately sent the same, inclosed in a letter, to Richard Smith, cashier of the office of discount and deposit of the Bank of the United States, at Washington, with an indorsement thereon, in these words: "Triplett and Neale v. The Bank of Washington, 1824. Use and benefit of the office of discount and deposit, United States, Washington city. Charles Neale." That the said Richard Smith wrote an indorsement thereon, in these words: "Pay to Mr. Brooke Mackall. Richard Smith, Cashier." That the said Brooke Mackall, the runner in the said office, presented the execution, &c. to the Bank of Washington, and there, on the 9th of September, 1824, received the sum of $881.18, and signed the receipt thereon, in these words: "Received eight hundred and eighty-one dollars and eighteen cents. B. Mackall." And, at the time of signing the same, William A. Bradley, then cashier of the Bank of Washington, verbally gave notice to the said Mackall, that it was the intention of the said Bank of Washington to appeal to the supreme court, and that the said office of discount and deposit would be expected, in case of a reversal of the judgment, to refund the amount. That the said Mackall received the said sum, as the amount of principal and interest accrued on the said judgment, as appears by his receipt on the said execution; which sum he delivered to the said Smith, who entered it to the credit of C. Neale, one of the firm of Triplett & Neale, on the proper books of the said office. That before delivery of the said execution to the said Smith, as aforesaid, the said C. Neale had promised to appropriate the money, expected to be recovered from the Bank of Washington in that suit, to reduce certain accommodation discounts which he, the said Neale, had running in the said bank, upon notes drawn by him, and indorsed by indorsers as sureties for the due payment thereof, which discounts were still running upon such notes at the time and times the said execution was so delivered, and when the money was paid as aforesaid. That he, said Smith, received the said execution, with the said Neale's said indorsement thereon, as he understood and considered, for collection; and, when collected, he deposited the same in bank, to the said Neale's credit generally, and would

have sent the same to him at Alexandria, if he had requested him to do so; and would have paid his check for the amount. That immediately upon the receipt of the said money, as aforesaid, the said Smith wrote a letter to the said Neale, in the words following: "Office Bank United States, Washington, September 9th, 1824. Christopher Neale, Esq. Dear Sir,—I have received the sum of eight hundred and eighty-one dollars and 18–100 cents from the Bank of Washington, in payment of your judgment against it, and have placed the same to your credit. Be good enough to give me specific directions of the way in which you wish it applied. Yours, respectfully, Richard Smith, Cashier." To which letter the said C. Neale returned the following answer: "Dear Sir,—In reply to your esteemed favor, I have to request that you will apply the money received from the Bank of Washington to the reduction of the notes indorsed by John H. Ladd & Co. and John A. Stewart, equally, after paying Thomas Swann and Walter Jones, Esq., $100 between them, or $50 each, as their fees. Yours, truly, Christopher Neale. September 10,. 1824." That the said Smith applied the said money pursuant to the directions of the last-mentioned letter.

It is submitted to the court, upon the foregoing case agreed, whether the plaintiffs are entitled to recover of the defendants, the money, with interest, so received and applied by the said Smith as aforesaid. If the court decide in the affirmative, judgment to be entered for the plaintiffs for the sum of $881.18, with interest from the 9th day of September, 1824, till paid, and costs; otherwise for the defendants, with costs. (Any objections to the competency of the evidence as here stated, to be considered by the court.) N. B. The plaintiff also shows the record of the final trial at Alexandria court of November term, 1829, and it is to be considered as here inserted.

There can be no doubt that the money paid upon an erroneous judgment, may, after reversal of the judgment, be recovered back in an action for money had and received. And if the money shall have been paid to an agent of the original plaintiff, and remains in his hands, at the time of reversal and demand, it may be so recovered of the agent. In all the cases in the books, where money paid by mistake, has been paid to an agent, and he has had notice of the mistake before he has, bona fide, paid it over to his principal, he has been held liable to refund it. We do not perceive any difference, in principle, between the case of money paid by mistake, and money paid upon an erroneous judgment. If the assignee of an erroneous judgment is the absolute owner of it by purchase, without recourse to the assignor, and receives the amount from the defendant, he receives it as principal; and upon reversal of the

judgment, is as much liable to refund it to the defendant, as if he had been the original plaintiff in the action, whether he had or had not notice, at the time of receiving it, that the original defendant intended to prosecute a writ of error. If he received the money as agent, and, at the time of receiving it, had such notice, he is put upon his guard; and, if he pays over the money to his principal, without security for his indemnity, it is at his own peril; for the notice makes him liable to refund it to the original defendant in case the judgment should be reversed. In the present case, the notice accompanied the payment. If Mr. Mackall was competent to receive the money, he was competent to receive the notice. It was sufficient for the Bank of Washington that the notice should accompany the payment. They could not tell, beforehand, who would demand payment of the judgment. They could not, therefore, give any previous notice to the bank. It is true that they might have given notice to Triplett & Neale, the original plaintiffs; but they were not bound to give it. It was sufficient for them to wait until payment should be demanded. We think that the notice to Mr. Mackall, the agent of the Bank of the United States, placed that bank on the same ground of liability as that upon which the original plaintiffs stood; and that they are equally bound to refund the money, upon the reversal of the original judgment.

THRUSTON, Circuit Judge, absent, but understood as agreeing in the result of this opinion.

Reversed by the supreme court. [Bank of U. S. v. Bank of Washington,] 6 Pet. [31 U. S.] 8.

[NOTE. The supreme court reversed the judgment for the reason, with others, as stated by Thompson, J., that "no notice whatever could change the rights of the parties, so as to make the Bank of the United States responsible to refund the money. When the money was paid, there was a legal obligation on the part of the Bank of Washington to pay it, and a legal right on the part of Triplett & Neale to demand and receive it, or to enforce payment of it under the execution; and whatever was done under that execution while the judgment was in full force was valid and binding on the Bank of Washington, so far as the rights of strangers or third persons are concerned. The reversal of the judgment cannot have a retrospective operation, and make void that which was lawful when done. The reversal of the judgment gives a new right or cause of action against the parties to the judgment, and creates a legal obligation on their part to restore what the other party has lost by reason of the erroneous judgment; and, as between the parties to the judgment, there is all the privity necessary to sustain and enforce such right, but as to strangers there is no such privity; and if no legal right existed, when the money was paid, to recover it back, no such right could be created by notice of an intention so to do." Bank of U. S. v. Bank of Washington, 6 Pet. (31 U. S.) 8.]

